# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

ANDREW SANAKEO
     *Plaintiff,*

*v.*

CITY OF FRANKLIN, TENNESSEE; COLE
CANON; KEVIN SPRY; BRANDON PERRY; and
WILLIAM TRAVIS
     *Defendants.*

Case No.

JURY DEMANDED

## COMPLAINT

Comes now the Plaintiff, Andrew Sanakeo, by undersigned counsel and for his complaint against the Defendants states the following:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth Amendment to the Constitution of the United States of America.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs

1

to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

4.     This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district.  Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

5.     Plaintiff Andrew Sanakeo is an adult resident of Williamson County, Tennessee.

6.     Defendant Cole Canon is a police officer of the Franklin Police Department. He is sued in his individual capacity.

7.     Defendant Kevin Spry is a police officer of the Franklin Police Department. He is sued in his individual capacity.

8.     Defendant Brandon Perry is a police officer of the Franklin Police Department. He is sued in his individual capacity.

9.     Defendant William Travis is a police officer of the Franklin Police Department. He is sued in his individual capacity.

10.     Defendant City of Franklin is a political subdivision of the State of Tennessee and is the employer of Defendant Spry, Defendant Canon, Defendant Perry, and Defendant Travis.

## FACTUAL ALLEGATIONS

11.     At all times relevant to this Complaint Defendants Canon, Perry, Spry, and Travis were acting under color of state law when they detained, arrested, and

initiated and influenced the prosecution against Plaintiff Sanakeo.

12. On August 30, 2025, Plaintiff Sanakeo and several friends were leaving the Franklin bar "Neighbors" when Defendants Canon and Perry approached them.

13. Defendant Canon stated that the officers were investigating whether Neighbors was "over-serving" alcohol to patrons because they believed the bar "wasn't doing people right."

14. Defendant Perry requested identification from Plaintiff and the individuals accompanying him.

15. One member of Plaintiff's group informed the officers that they did not wish to participate in the investigation.

16. Defendant Canon then stated that it was illegal to serve alcohol to someone who was "visibly intoxicated."

17. Despite making that statement, Defendant Canon repeatedly told Plaintiff that he was "good" and that he was "not in trouble."

18. Defendant Canon further stated that he only needed Plaintiff's identification so that he could include Plaintiff's name in a report concerning the bar's alleged over-service of alcohol.

19. Plaintiff and his companions again informed the officers that they did not wish to participate in the investigation and began to walk away.

20. Defendants Canon and Spry began following Plaintiff and his friends.

21. Defendant Canon then stated that Plaintiff and his friends were being detained and were not free to leave.

3

22. Plaintiff asked why they were being detained.

23. Defendant Canon did not provide any factual basis or legal justification for the detention.

24. Defendant Canon stated Plaintiff and his friends were being detained and were not free to leave, simply because they did not want to speak with him. [1]

25. Plaintiff and his companions continued walking away.

26. At no point did Defendants order Plaintiff or his companions to stop.

27. Plaintiff and his friends eventually returned inside Neighbors.

28. Shortly thereafter Defendant Travis arrived at the location.

29. Once inside Neighbors, Defendant Travis told Plaintiff and his friends that he would "arrest all of you if you don't step outside," and that they were "under investigation."

30. The situation quickly escalated when Defendant Travis physically restrained a woman who was accompanying Plaintiff.

31. The woman screamed in pain and fear as officers attempted to restrain her.

32. Defendants then began arresting Plaintiff and members of his group.

33. Defendant Travis later admitted that he never observed Plaintiff stumble or otherwise appear intoxicated.

34. A bystander informed Defendants that he had been around Plaintiff and his friends throughout the evening and had not observed anyone stumbling or appearing

---

[1] "Beauchamp's exercise of his right to walk away—even if the walk was made hurriedly, briskly, or snappily—does not turn his otherwise innocuous behavior into the conduct of a 'suspicious suspect.'" *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011)

intoxicated.

35. Defendants ignored this information.

36. After the arrests were made, a server from Neighbors approached an undercover officer who was present at the scene.

37. The server informed the officer that Plaintiff was not intoxicated.

38. The server also provided the officer with a receipt, and explained that the Plaintiff had split a single pitcher of beer with others at the table, and ordered a water and a burger.

39. The server explained that the other alcoholic beverages reflected on the receipt were consumed by other individuals.

40. Despite this readily available exculpatory information, Defendants arrested Plaintiff.

41. Defendant Canon subsequently swore out an Affidavit of Complaint charging Plaintiff with:

    a) Public Intoxication in violation of Tenn. Code Ann. § 39-17-310,

    b) Disorderly Conduct in violation of Tenn. Code Ann. § 39-17-305, and

    c) Evading Arrest in violation of Tenn. Code Ann. § 39-16-603.

42. In the affidavit, Defendant Canon claimed that Plaintiff was swaying, staggering, and unable to safely care for himself.

43. Defendant Canon also claimed that Plaintiff caused barstools to fall while officers attempted to apprehend him.

44. Defendant Canon's affidavit omitted material exculpatory information

known to Defendants at the time, including:

     a) Statements from a bystander who had been with Plaintiff throughout the evening and confirmed that Plaintiff was not intoxicated.

     b) Statements from a Neighbors server explaining the level of Plaintiff's alcohol consumption.

     c) The receipt showing that Plaintiff had not purchased alcoholic beverages for himself.

45. Defendant Canon's affidavit also failed to allege facts establishing the statutory elements of public intoxication under Tenn. Code Ann. § 39-17-310, including that Plaintiff posed a danger to himself, posed a danger to others or property, or unreasonably annoyed individuals in the vicinity.

46. Defendant Canon likewise failed to allege facts establishing the elements of evading arrest under Tenn. Code Ann. § 39-16-603, as the affidavit does not allege that Plaintiff fled after being informed that he was under arrest.

47. At the time Defendant Canon swore out the affidavit, he lacked probable cause to believe Plaintiff had committed any criminal offense.

48. As a direct result of Defendant Canon's affidavit and Defendants' actions, Plaintiff was arrested and criminally prosecuted.

49. As a direct result of Defendants' actions and the charges initiated against him, Plaintiff Sanakeo was required to post a $500 bond to secure his release pending trial.

50. On January 20, 2026, all charges against Plaintiff were dismissed.

MUNICIPAL LIABILITY ALLEGATIONS

51.    Upon information and belief, Defendant City of Franklin Tennessee has maintained official policies, widespread customs, or tolerated practices that were the moving force behind the deprivation of Plaintiff's clearly established constitutional rights, including:

    a) A failure to implement investigative protocols to ensure that officers consider readily available exculpatory evidence, including eyewitness accounts, physical evidence, and video footage, before initiating arrests;

    b) A custom or practice of permitting arrest warrants to be taken out where the readily available exculpatory facts and evidence negate probable cause.

52.    Upon information and belief, these failures were known to policymakers within the City of Franklin Tennessee Police Department who either affirmatively sanctioned the practices or exhibited deliberate indifference by failing to correct them in the face of repeated or obvious constitutional violations.

53.    The City of Franklin Tennessee's failure to adequately train, supervise, or discipline its officers with respect to these recurring situations constituted deliberate indifference to the constitutional rights of individuals, including Plaintiff, and was the moving force behind the Fourth Amendment violations alleged herein.

**CLAIM 1 — UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT**
**42 U.S.C. § 1983**
**(Defendants Canon, Spry, Perry, and Travis)**

54.    The initial encounter outside Neighbors was consensual, and Mr. Sanakeo

7

was free to decline the officers' requests and to walk away.

55. Mr. Sanakeo's decision to decline to provide identification and to walk away was lawful and could not supply reasonable suspicion or probable cause to detain or arrest him.

56. Mr. Sanakeo was seized when Defendant Canon told him that he was not free to leave and the officers followed him to prevent his departure.

57. At the moment of that seizure, Defendants lacked reasonable, articulable suspicion that Mr. Sanakeo had committed, was committing, or was about to commit any offense.

58. The seizure escalated into a full arrest inside Neighbors, for which Defendants lacked probable cause to believe that Mr. Sanakeo had committed Public Intoxication, Disorderly Conduct, or Evading Arrest.

59. Defendants did not observe Mr. Sanakeo stumble, fall, or appear intoxicated, and Defendant Travis admitted that he never observed Mr. Sanakeo appear intoxicated.

60. Before the arrest, Defendants were presented with readily available exculpatory information negating probable cause for public intoxication.

61. Mr. Sanakeo did not flee a known, arrest, and he was never told that he was under arrest before the officers moved to restrain him.

62. Defendants Canon and Perry initiated and carried out the unlawful detention outside Neighbors. Defendants Canon, Perry, and Travis participated in the confrontation inside Neighbors and in arresting Mr. Sanakeo. Each Defendant

personally participated in the unlawful seizure inside Neighbors.

63.     In the alternative, to the extent any Defendant did not personally effect the seizure, that Defendant was present, knew that no lawful basis for the seizure existed, had a realistic opportunity to intervene, and failed to do so.

64.     As a direct and proximate result of Defendants' unlawful seizure, Mr. Sanakeo was deprived of his liberty, arrested, transported to jail, and required to post bond.

## CLAIM 2 — MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983
### (Defendants Canon, Spry, Perry, and Travis)

65.     Mr. Sanakeo incorporates the foregoing paragraphs as if fully restated herein.

66.     Defendant Canon initiated criminal proceedings against Mr. Sanakeo by swearing out the three Affidavits of Complaint described above.

67.     The affidavits stated that Mr. Sanakeo was swaying, was staggering, was unable to safely care for himself, and that he caused barstools to fall. These statements were false.

68.     The affidavits attributed the observations of intoxication to Defendant Spry. Defendant Spry supplied those false observations, and Defendant Canon swore to them, each knowing them to be false or acting with reckless disregard for their truth.

69.     Defendant Canon omitted from the affidavits the material exculpatory information known to the officers, including the bystander's statement, the server's statement, and the receipt showing that Mr. Sanakeo had not purchased alcohol.

9

70. The false statements and omissions were material to the judicial commissioner's probable-cause determinations. Corrected for the falsehoods and supplemented with the omitted information, the affidavits would not have established probable cause for any charge.

71. Probable cause is evaluated separately for each charge. Defendants lacked probable cause to believe that Mr. Sanakeo had committed Public Intoxication, Disorderly Conduct, or Evading Arrest.

72. The Evading Arrest charge was the only charge that carried monetary bail. That baseless charge caused Mr. Sanakeo to be required to post a $500 bond, while the other two charges released him on his own recognizance. The Evading Arrest charge therefore caused a deprivation of Mr. Sanakeo's liberty.

73. Defendants Spry, Perry, and Travis were each personally present and each participated in detaining, arresting, and transporting Mr. Sanakeo. Upon information and belief, each received the exculpatory information described above before the affidavits were sworn, and Defendant Travis admitted that he never observed Mr. Sanakeo appear intoxicated.

74. Each of Defendants Spry, Perry, and Travis had the opportunity to disclose the exculpatory information to Defendant Canon, to the judicial commissioner, and to the prosecutor, and each failed to do so.

75. By supplying or swearing the false observations, by withholding the exculpatory information, and by effecting the arrest on which the charges rested, each Defendant made, influenced, or participated in the decision to prosecute Mr. Sanakeo.

10

76. Mr. Sanakeo was deprived of his liberty as a consequence of the proceedings, including the $500 bond, the conditions of his release, and his obligation to appear and defend against the charges.

77. All charges against Mr. Sanakeo were dismissed on January 20, 2026, without a conviction.

### CLAIM 3 — MUNICIPAL LIABILITY UNDER MONELL
### 42 U.S.C. § 1983
### (Defendant City of Franklin)

78. Mr. Sanakeo incorporates the foregoing paragraphs as if fully restated herein.

79. The Franklin Police Department is an agency of Defendant City of Franklin, and the City is responsible under Tennessee law for the policies, customs, training, supervision, and discipline of its police officers.

80. Under the Charter and ordinances of the City of Franklin, the Chief of Police is the final policymaker for the City with respect to the supervision, training, and discipline of Franklin police officers and the practices governing detentions, arrests, and the initiation of criminal charges.

81. Upon information and belief, the City of Franklin maintains a widespread custom under which Franklin officers, having identified a person as a target, proceed to detain and arrest that person regardless of whether the facts known at the time establish reasonable suspicion or probable cause, and disregard readily available exculpatory information. The conduct alleged against Defendants Canon, Spry, Perry, and Travis is an example of that custom.

11

82. Upon information and belief, the City of Franklin maintains a custom under which the officer who swears an Affidavit of Complaint relies solely on the complaining witness report and disregard readily available exculpatory information. The Department has no protocol requiring on-scene officers to disclose exculpatory information to the affiant, and no protocol requiring supplementation of an affidavit when additional exculpatory information is received. That custom produced Defendant Canon's false and materially incomplete affidavits against Mr. Sanakeo.

83. Upon information and belief, the City of Franklin has failed to train its officers on the requirements for a lawful investigative detention, on the duty to consider readily available exculpatory information before detaining or arresting a person and on the affiant's duty to include material exculpatory information in an affidavit of complaint.

84. The need for such training is obvious. Franklin officers routinely encounter civilians in fast-moving public-intoxication and disorderly-conduct situations in which witnesses, bar staff, and documentary evidence are immediately available and may confirm or negate suspicion. The predictable consequence of the absence of training is that officers will detain and arrest persons who are not committing any offense.

85. The customs, training deficiencies, and supervisory and disciplinary failures described above were known, or in the proper exercise of the City's responsibilities should have been known, to the City of Franklin and its final policymaker, and the failure to correct them in the face of obvious risks constituted deliberate indifference.

86. These customs, training deficiencies, and supervisory and disciplinary failures, separately and in combination, were the moving force behind the unlawful seizure and malicious prosecution of Mr. Sanakeo and the deprivation of his Fourth Amendment rights.

## DAMAGES

87. As a direct and proximate result of Defendants' violations of his federally protected rights, Mr. Sanakeo has suffered:

a) Loss of liberty;

b) Humiliation and reputational harm;

c) Financial expense, including but not limited to the costs of defending the criminal charges;

d) Loss of enjoyment of life; and

e) Mental suffering and emotional distress.

88. Based on the intentional and reckless misconduct of the individual Defendants, Mr. Sanakeo requests an award of punitive damages against Defendants Canon, Spry, Perry, and Travis. Mr. Sanakeo does not seek punitive damages against Defendant City of Franklin.

## REQUEST FOR RELIEF

Based upon all the foregoing, Mr. Sanakeo requests:

I. That process issue and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II. That a jury be empaneled to try this case;

III.     That a declaratory judgment be entered;

IV.     That Mr. Sanakeo be awarded nominal damages;

V.     That Mr. Sanakeo be awarded compensatory damages in the amount of four hundred thousand dollars;

VI.     That Mr. Sanakeo be awarded punitive damages against Defendants Canon, Spry, Perry, and Travis in an amount deemed appropriate by a jury;

VII.     That Mr. Sanakeo be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VIII.     For pre- and post-judgment interest on all damages awarded; and

IX.     For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Wesley Ben Clark*
Wesley Ben Clark, #32611
Paul D. Randolph, #39667
**BRAZIL CLARK, PLLC**
760 E Argyle Avenue
Nashville, TN 37203
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
paul@brazilclark.com

14